**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| QUIRKY, INC. and BEN KAUFMAN,<br><br>        Plaintiffs,<br><br>    v.<br><br>DAVISON DESIGN & DEVELOPMENT, INC.<br><br>        Defendant. | CIVIL ACTION No.:  2:12-cv-00262-JFC<br><br>JUDGE JOY FLOWERS CONTI |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S**
**<u>MOTION TO DISMISS THE COMPLAINT</u>**

**TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................. 1

II. FACTUAL BACKGROUND ................................................................................ 3

III. ARGUMENT ........................................................................................................ 6

    A. Plaintiffs' Lanham Act and State Trademark Infringement And Unfair Competition Pleadings Are Insufficient As A Matter Of Law ........ 6

    B. Plaintiffs' New York Violation Of The Right To Privacy Claim Must Fail Because The Use Of The Name Of A Public Figure Is Not A Violation Of Privacy ................................................................................... 9

IV. CONCLUSION ................................................................................................... 12

## **TABLE OF AUTHORITIES**

### **CASES**

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000) ................................................................................................. 7
*Ann-Margret v. High Society Magazine, Inc.*, 498 F. Supp. 401, 404 (S.D.N.Y. 1980) ................................................................................................. 11
*Arrington v. New York Times Co.*, 55 N.Y.2d 433, 439 .................................................. 10
*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) ........................................................... 2, 6
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ........................................... 2, 6
*Bi-Rite Enters., Inc. v. Button Master*, 555 F. Supp. 1188, 1197-98 (S.D.N.Y. 1980) ............................................................................................. 10, 11
*E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 191 (3d Cir. 2008) ................................................................................................. 7
*Facenda v. NFL Films, Inc.*, 542 F.3d 1007, 1014 (3d Cir. 2008) ................................. 7
*Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994) ................................................................................................. 9
*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ................................... 6
*Gautier v. Pro-Football, Inc.*, 278 A.D. 431, 439 (N.Y.A.D. 1951) ........................... 10, 11
*Gideons Int'l, Inc. v. Gideon 300 Ministries, Inc,* 94 F. Supp. 2d 566, 580 (E.D. Pa. 1999) ................................................................................................. 8
*Haynes Int'l v. Electralloy*, No. 04-197E, 2009 WL 789918 at *11 (W.D. Pa. March 24, 2009) ............................................................................................. 7
*J.G. Wentworth, S.S.C. v. Settlement Funding LLC*, Civ.A.No. 06-0597, 2007 WL 30115 at *2 (E.D. Pa. Jan. 4, 2007) .................................................. 2, 3, 4, 7
*Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) ............................... 6
*Roberson v. Rochester Folding Box Co.*, 171 N.Y. 538 (1902) ..................................... 10
*Scott Fetzer Co. v. Gehring*, 288 F. Supp. 2d 696, 703 (E.D. Pa. 2003) ....................... 8

### **RULES AND STATUTES**

54 Pa. C.S.A. § 1123(a)(1) ............................................................................................. 9
Fed.R.Civ. P. 12(b)(6) ................................................................................... 2, 3, 6, 12
N.Y. Civ. Rts. § 51 ........................................................................................................ 10

### **SECONDARY SOURCES**

Stacey L. Dogan & Mark A. Lemley, *Trademarks and Consumer Search Costs on the Internet,* 41 Hous. L. Rev. 777, 820 (2004) .................................. 8

I. **INTRODUCTION**

In this case, Quirky, Inc. ("Quirky") and its owner Ben Kaufman ("Kaufman") (collectively "Plaintiffs") assert two (2) basic types of claims against Davison: 1) claims based on infringement of Quirky's service mark rights in the words "QUIRKY" and Ben Kaufman; and 2) a claim based on Kaufman's privacy rights under a New York statute.

The first type of claim is based on service mark rights. "QUIRKY" is registered as a service mark for "product development, research, design and engineering services for others," and related services in International Class 42. Although "Ben Kaufman" is not registered as a mark, Plaintiffs allege that the name "has become synonymous with Quirky and the QUIRKY trademark." Complaint at ¶ 18. Davison is in a business similar to Quirky's and uses "DAVISON" as its service mark for similar services.[1] Plaintiffs do not allege that "DAVISON" is likely to be confused with "QUIRKY" or "Ben Kaufman." Plaintiffs also do not allege that Davison's advertisements or webpages ever displayed Quirky's trademark, Mr. Kaufman's name or any similar words. Rather, Plaintiffs allege only that Davison uses the "QUIRKY" mark and the words "Ben Kaufman" as sponsored ad keywords in connection with internet advertising services offered by Google and other search engine providers.

Plaintiffs allege that this use of "QUIRKY" and "Ben Kaufman" by Davison causes a likelihood of confusion as to the source of Davison's services and is otherwise likely to mislead and deceive consumers. This is the basis for Counts I, II, III, V and VI

---

[1] Davison is a registered service mark for "Innovation consulting services, namely advising others in the areas of product and packaging development; product and packaging research and development; design and testing of new products and packaging for others" in International Class 42 and for related services in International Classes 35 and 45. See U.S. Service Mark Registration No. 4,043,894.

of the Complaint. However, such claims have been, and should be, dismissed under Fed.R.Civ.P. 12(b)(6). Davison therefore moves to dismiss these Counts of the Complaint with prejudice under Fed.R.Civ.P. 12(b)(6) because Plaintiffs have not stated and cannot state a claim for relief under *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) in that Plaintiffs cannot establish that Davison's actions are likely to cause confusion or to deceive consumers. *See*, *e.g.*, *J.G. Wentworth, S.S.C. v. Settlement Funding LLC*, Civ.A.No. 06-0597, 2007 WL 30115 at *2 (E.D. Pa. Jan. 4, 2007) (granting Rule 12(b)(6) dismissal of a trademark infringement claim involving the use of plaintiff's mark as a sponsored ad keyword).

The second type of claim asserted by Plaintiffs is for violation, through the alleged use of the words "Ben Kaufman" as sponsored ad keywords, of Kaufman's privacy rights under New York Civil Rights Law §§ 50-51. However, in the Complaint, Plaintiffs also allege that Ben Kaufman is nationally known and that his name enjoys "significant recognition" in association with the business of Quirky. Case law construing New York Civil Rights Law §§ 50-51 holds that public figures whose names are in the public domain have no privacy claims thereon, and that there can also be no privacy claim where the plaintiff seeks to protect his business rather than his personal feelings and "right to be let alone." The Complaint not only fails to allege any harm to Mr. Kaufman's personal feelings, but instead specifically states that Mr. Kaufman's name has "become synonymous" with Quirky's business—in other words, Plaintiffs' allegations amount to precisely the type of effort to protect a business, rather than an individual, that New York courts have held do not fall within the purview of New York's right to privacy.

Davison therefore moves to dismiss Plaintiffs' Count V under Fed.R.Civ. P. 12(b)(6) for failure to state a claim.

## II.     FACTUAL BACKGROUND

As noted in the introduction, both Plaintiff Quirky and Defendant Davison are providers of "product development, research, design and engineering services." Complaint (Dkt. 1) at ¶¶ 7, 19. Plaintiffs' allegations are premised entirely on Davison's alleged purchase of "sponsored ad keywords," a service offered by Google and other internet search engines that enables advertisers to have a sponsored ad and link to their website displayed in the advertising section whenever internet users run searches that incorporate the sponsored ad keyword. *See* Complaint (Dkt. 1) at ¶¶ 22-25. Specifically, Plaintiffs allege that Davison purchased the word "quirky," which Plaintiff Quirky has registered as a service mark, and the words "Ben Kaufman," the owner of Quirky, as sponsored ad keywords. As a result, when an internet search includes these keywords, an ad for Davison with a link to Davison's website is displayed in a sidebar (not in the search results). *Id.* The Eastern District of Pennsylvania has previously addressed sponsored ad keyword services in the context of trademark infringement claims under the Lanham Act and related state laws, explaining that:

> Advertisers participating in AdWords purchase or bid on certain keywords, paying Google for **the right to have links to their websites displayed in the Sponsored Links section** whenever an internet user searches for those words…. Businesses often participate in the AdWords program to generate more visits to their websites.

*J.G. Wentworth*, 2007 WL 30115, at *2 (granting Rule 12(b)(6) motion to dismiss) (emphasis added).

The ads displayed as a result of the sponsored ad keywords services do not appear within the list of search results, but rather in an advertising section. *Id.*; *see also* Complaint (Dkt. 1) at ¶ 24 ("searches by consumers for any of the Infringing Keywords… yield prominently featured 'sponsored ads' that link to Defendant's website"); *id.* at Ex. B (examples of web pages displaying sponsored ads separately from the list of search results). Moreover, Plaintiffs do not allege that Davison's internet advertisements themselves contain any of Quirky's marks. *See* Complaint (Dkt. 1) at ¶¶ 1 to 36. Indeed, the use of sponsored ad keywords services offered by Google and other search providers does not result in the keywords themselves—here, allegedly "quirky" and "Ben Kaufman"—appearing in the sponsored ads. *See, e.g., J.G. Wentworth*, 2007 WL 30115 at *6 (describing sponsored ad keywords as a "use of plaintiff's marks in a method invisible to potential consumers"). Rather, sponsored ad keywords services operate by detecting when an internet user has typed certain words into an internet search engine and then, in response, displaying the sponsored ads in an advertising section of the webpage in addition to displaying the search results. *See id.* at *2 (by using certain terms as sponsored ad keywords, "an internet search for those terms produces a Sponsored Link… on the search results screen").

Plaintiffs' Complaint sets forth bare allegations that Davison's purchase of keywords "is likely to cause consumer confusion as to the source and origin" of Davison's services, is "likely to cause initial interest consumer confusion" and, "upon information and belief,… has actually caused consumer confusion…." Complaint (Dkt. 1) at ¶ 28-30. **No facts** are set forth to support any of those allegations. *See id.* Rather, Plaintiffs merely refer to the service mark rights Quirky holds in the federally registered mark "QUIRKY." In

addition to citing that registration, the Complaint also alleges that Quirky's owner and co-plaintiff Ben Kaufman has appeared on "various television and Internet shows" and in "numerous print and Internet magazines" and has been nationally recognized by the media, such as being named the 2007 "top entrepreneur in the country under the age of 30" by *Inc.* magazine and being "featured in the cover story of *Entrepreneur* magazine" in August 2011.  Complaint (Dkt. 1) at ¶¶ 9, 15-17.  Accordingly, Plaintiffs claim, Mr. Kaufman has "significant recognition and goodwill in his own name." *Id.* at ¶ 18.  However, Plaintiffs do not allege that "Ben Kaufman" is a trademark or service mark owned by either plaintiff. *See id.* at ¶¶ 14-18.

Despite case law dismissing such claims under Rule 12(b)(6), Counts I through III of the Complaint alleges that Davison infringed Plaintiff Quirky's service mark and committed both false designation of origin and false endorsement under the Lanham Act when it "purchased from various Internet search engines sponsored ad keywords comprised of or incorporating… [the] QUIRKY trademark" and the personal name of Quirky's owner, Ben Kaufman.  Complaint (Dkt. 1), at ¶¶ 22, 37-42.  Counts V and VI reiterate essentially the same claims under the guise of Pennsylvania state common-law unfair competition and state statutory trademark infringement. *Id.* at ¶¶ 46-49.  Finally, Count IV alleges that by the same means—purchasing internet advertising keywords incorporating his name—Davison also infringed the New York state privacy rights of Quirky's owner, Mr. Kaufman (notwithstanding the fact that Plaintiffs's elsewhere alleges that Mr. Kaufman is a public figure).  *Id.* at ¶¶ 14-18, 43-45.

### III. ARGUMENT

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss all or part of an action for "failure to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). As the Supreme Court explained in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009), to "survive a motion to dismiss, a complaint must contain *sufficient factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" (emphasis added) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). As the Third Circuit explained in *Fowler*:

> [W]hen presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. … Second, a District Court must then determine **whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."**

578 F.3d at 210-11 (citations omitted) (emphasis added). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555); *see also Fowler*, 578 F.3d at 210; *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).

### A. Plaintiffs' Lanham Act and State Trademark Infringement And Unfair Competition Pleadings Are Insufficient As A Matter Of Law

Plaintiffs' Lanham Act and state trademark claims are insufficient because not only do Plaintiffs fail to set forth "facts… sufficient to show… a 'plausible claim for relief,'" Plaintiffs do not actually set for **any facts at all** on a key element of its Lanham Act and state trademark claims—namely, likelihood of confusion. *See* Complaint (Dkt. 1) at ¶¶

28-30. Such "threadbare recitals" do not suffice as a matter of law. *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

To prove trademark infringement under the Lanham Act, as Plaintiffs have alleged in Count I, "a plaintiff must prove that (1) the mark is valid and legally protectable, (2) it owns the mark, and (3) ***the defendant's use of the mark is likely to create confusion*** concerning the origin of goods or services." *E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 191 (3d Cir. 2008) (emphasis added). "These same elements must be established to prove… false designation of origin" under the Lanham Act, which Plaintiffs allege in Count II. *Haynes Int'l v. Electralloy*, No. 04-197E, 2009 WL 789918 at *11 (W.D. Pa. March 24, 2009) (citing *A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000)). A Lanham Act false endorsement claim, such as that alleged in Count III of the Complaint, also fails unless the plaintiff establishes those three elements. *Facenda v. NFL Films, Inc.*, 542 F.3d 1007, 1014 (3d Cir. 2008) (articulating the third element as "defendant's use of the mark to identify its goods or services is ***likely to create confusion*** concerning the plaintiff's sponsorship or approval of those goods or services.") (emphasis added).

In another case alleging Lanham Act and state trademark infringement and unfair competition claims based on the defendant's purchase of sponsored ad keywords comprising or containing the plaintiff's marks, the Eastern District of Pennsylvania dismissed the claims for failure to state a claim under Federal Rule 12(b)(6). *J.G. Wentworth*, 2007 WL 30115, at *8. The court granted the motion to dismiss in *Wentworth* despite the fact that (1) *Wentworth* predated both the *Twombly* and *Iqbal* cases, and was thus decided under earlier case law under which pleadings were held to a lower standard

for purposes of a Rule 12(b)(6) motion, see id. at *3; and (2) *Wentworth* was a closer case, in that the defendant was also accused of using the plaintiff's marks in the meta tags of the defendant's website—allegations that were not made here. *Id.* at *1. The *Wentworth* court held that "as a matter of law defendant's actions [in purchasing keywords, and also using meta tags, comprising plaintiff's marks] do not result in any actionable likelihood of confusion under the Lanham Act" because:

> At no point are potential consumers 'taken by a search engine' to defendant's website…. Rather… a link to defendant's website appears… as one of many choices for the potential consumer to investigate…. [T]he links to defendant's website always appear as independent and distinct links on the search result pages…. [and] plaintiff does not allege that defendant's advertisements and links incorporate plaintiff's marks in any way discernable to internet users and potential customers….
>
> Due to the separate and distinct nature of the links created on any of the search results pages… potential consumers have no opportunity to confuse defendant's services, goods, advertisements, links or websites for those of plaintiff.

*Id.* at *6-8; see also Stacey L. Dogan & Mark A. Lemley, *Trademarks and Consumer Search Costs on the Internet,* 41 Hous. L. Rev. 777, 820 (2004) ("[T]he fact that an advertiser uses a keyword to reach a consumer with accurate information that is of interest to that consumer cannot itself be 'confusion' …. It may be a diversion of consumer attention, but if the consumer is not confused, that diversion is simply not illegal.").

    Plaintiffs' state law claims, set forth in Counts V and VI, fail for the same reason. *See, e.g.*, *Scott Fetzer Co. v. Gehring,* 288 F. Supp. 2d 696, 703 (E.D. Pa. 2003) ("The elements for [federal trademark infringement, federal unfair competition, and Pennsylvania common law unfair competition] are identical except that the federal

claims require an effect on interstate commerce."); *Gideons Int'l, Inc. v. Gideon 300 Ministries, Inc,* 94 F. Supp. 2d 566, 580 (E.D. Pa. 1999) ("The test for [Pennsylvania] common law trademark infringement and unfair competition is essentially the same as the test for infringement and unfair competition under the Lanham Act.") (citing *Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir. 1994)); 54 Pa. C.S.A. § 1123(a)(1) (defining infringement of a Pennsylvania trademark as use of the plaintiff's mark "in a manner likely to cause confusion or mistake or to deceive as to the source of origin of [defendant's] goods or services"). Given the **total absence** from the Complaint of any factual allegations regarding likelihood of confusion, Plaintiffs have failed to state a Pennsylvania state claim as a matter of law. *See Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 555).

The case at bar presents precisely the same issue in precisely the same context as in the *Wentworth case*, and thus should be dismissed with prejudice because, as in *Wentworth*, Defendant Davison's alleged actions of purchasing sponsored ad keywords do not and cannot result in any likelihood of confusion under the Lanham Act or under the parallel Pennsylvania state law claims asserted in this case.

  **B.**  **Plaintiffs' New York Violation Of The Right To Privacy Claim Must Fail Because The Use Of The Name Of A Public Figure Is Not A Violation Of Privacy**

Plaintiffs' remaining claim alleges that by purchasing the name "Ben Kaufman" for use as a keyword—a purchase which, it is undisputed, is invisible to and unknown by the consumer—Davison somehow violated the privacy of Mr. Kaufman under New York's right to privacy statute, N.Y. Civil Rights Law ss. 50-51. Complaint (Dkt. 1) at ¶¶ 43-45. Plaintiffs bring this claim despite the fact that Plaintiffs also alleges that Mr.Kaufman is a

nationally known businessman whose entrepreneurial and public relations efforts have caused his name to achieve "significant recognition." *Id.* at ¶¶ 14-18.

It is well established that New York's Section 51 "was not enacted… to extend the law relating to unfair competition or to the appropriation of another's business or enterprise." *Gautier v. Pro-Football, Inc.*, 278 A.D. 431, 439 (N.Y.A.D. 1951). Rather, it protects "the individual, not his business, … [whose] individual personality [is] improperly injured." *Id.* at 434-35, 438-439 (reversing denial of motion to dismiss because there "was no… invasion of plaintiff's 'right to be let alone' in telecasting an act voluntarily performed by plaintiff… before 35,000 spectators" even though plaintiff "had made formal objection to the use of his name and picture" on television prior to the broadcast). Both Sections 50 and 51[2] "were drafted narrowly" in response to an early case in which no right of recovery was found where a flour company used, without permission, the photograph of a child (and private citizen) in advertisements for its flour. *Arrington v. New York Times Co.*, 55 N.Y.2d 433, 439 (citing *Roberson v. Rochester Folding Box Co.*, 171 N.Y. 538 (1902)). "Put another way, the Legislature confined its measured departure from existing case law to circumstances akin to those presented in *Roberson*. In no other respect did it undertake to roll back the court-pronounced refusal to countenance an action for invasion of privacy." *Id.*

Thus, "Section 51 protects a person's feelings and right to be let alone," and with certain narrow exceptions not at issue here, "public figures, with their likenesses, names and images already in the public domain, … have waived their rights to claim intrusions"

---

[2] Section 50 is a penal statute. N.Y. Civ. Rts. § 51 (providing that violators are "guilty of a misdemeanor."). Section 51 is its civil equivalent.

into their right of privacy. *Bi-Rite Enters., Inc. v. Button Master*, 555 F. Supp. 1188, 1197-98 (S.D.N.Y. 1980). Although Section 51 "if read literally, would provide an extremely broad cause of action… [it] has been narrowly construed by the courts, especially in the context of persons denominated 'public figures'…" *Ann-Margret v. High Society Magazine, Inc.*, 498 F. Supp. 401, 404 (S.D.N.Y. 1980) (citing, as examples of the narrow range of scenarios in which a public figure can maintain an action under Section 51, the "daily harassment of [him and his family] by a self-styled 'paparazzo'" and the publication of an "unauthorized drawing of [him] in the nude, 'accompanied by a plainly fictional and allegedly libelous bit of doggerel'").

Plaintiffs have nowhere alleged that Mr. Kaufman's "feelings and right to be let alone" have been impacted by the alleged use (in a manner invisible to consumers) of his name as a keyword for the placement of online advertising. Rather, contrary to the case law, Plaintiffs have "read [Section 51] literally, [as] providing an extremely broad cause of action" that it does not in fact provide. *See Ann-Margret*, 498 F. Supp. at 404. Plaintiffs have also pled facts, which at this juncture must be taken as true, suggesting that Mr. Kaufman—by virtue of his appearances on television and in widely distributed national magazines, and his 2007 selection as America's best entrepreneur under 30 of the year—is a public figure whose name is "already in the public domain." *Bi-Rite*, 555 F. Supp. at 1197-98; *cf.* Complaint (Dkt. 1) at ¶¶ 14-18. Moreover, Plaintiffs have alleged that Mr. Kaufman's name "has become synonymous with Quirky and the QUIRKY trademark[.]" *Id.* at ¶ 18. Thus, Plaintiffs' Section 51 claim must fail because Section 51 protects "the individual, not his business" and "was not enacted… to extend the law relating to unfair competition or to the appropriation of another's business or enterprise."

*Gautier*, 278 A.D. at 438-439 (N.Y.A.D. 1951).  For all these reasons, Count IV of Plaintiffs' Complaint must be dismissed.

**IV.    CONCLUSION**

For the foregoing reasons, it is respectfully submitted that Plaintiff's Complaint should be dismissed with prejudice in its entirety pursuant to Fed.R.Civ.P. 12(b)(6).  A proposed order is attached for the Court's convenience.

Dated: May 10, 2012

    s/James R. Kyper
James R. Kyper, Esq. (PA I.D. No. 23099)
Eliza K. Hall, Esq. (PA ID No. 205508)
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
412-355-6500
*Counsel for Defendant,*
  *Davison Design & Development, Inc.*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 10, 2012, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

      s/James R. Kyper
      James R. Kyper, Esq.
      K&L GATES LLP
      K&L Gates Center
      210 Sixth Avenue
      Pittsburgh, Pennsylvania 15222