**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| QUIRKY, INC. and BEN KAUFMAN,<br><br>        Plaintiffs,<br><br>        v.<br><br>DAVISON DESIGN & DEVELOPMENT, INC.<br><br>        Defendant. | CIVIL ACTION No.: 2:12-cv-00262-JFC<br><br>JUDGE JOY FLOWERS CONTI |

**REPLY BRIEF OF DAVISON DESIGN & DEVELOPMENT IN SUPPORT**
**OF ITS MOTION TO DISMISS THE COMPLAINT**

Neither the case law nor the argument in Plaintiffs' Opposition Brief draw into question the three points Davison made in its opening brief that show its entitlement to dismissal: (1) on the facts alleged, there is no likelihood of confusion as a matter of law; (2) consumers are not likely to believe that Plaintiffs endorsed Davison's services; and (3) New York's statutory right to privacy does not apply to the allegations here.

*I.*   ***Plaintiffs' Arguments on Likelihood of Confusion are Self-Contradictory and the Cases Cited are Readily Distinguishable***

    A.    Plaintiffs Misread the *Checkpoint* and *J.G. Wentworth* Cases

Plaintiffs cite *Checkpoint Systems v. Check Point Software Technologies, Inc.*, 269 F.3d 270, 297 (3d Cir. 2001) for their assertion that in this circuit, courts "determining likelihood of confusion… ***are required*** to analyze" all of the so-called *Lapp* factors and thus that Davison's motion to dismiss must fail because (1) it did not address those factors and (2) it relied on a closely analogous case from this circuit that also did not address them. Opp. Br. at 9 (emphasis in original). *Checkpoint*, however, does not support this assertion.

As the Third Circuit recognized in *Checkpoint*, the *Lapp* factors were developed to assist courts in determining whether "'consumers **viewing the mark** would probably assume the product or service it represents is associated with the source of a different product or service **identified by a similar mark**.'" *Checkpoint*, 269 F.3d at 280 (emphasis added).[2]  Since internet keyword advertising cases do not involve consumers "viewing" a defendant's mark and associating the defendant's goods with "the source of a different product or service identified by a similar mark," the *Lapp* factors are simply inapposite.  *See J.G. Wentworth, S.S.C. v. Settlement Funding, LLC*, No. 06-0597, 2007 WL 30115, at *6-7 (E.D. Pa. Jan. 4, 2007) (applying this *Checkpoint* test, rather than the *Lapp* factors, in an internet keyword advertising case and finding no likelihood of confusion as a matter of law).

Contradicting their claim that the *Lapp* factors are mandatory here, Plaintiffs recognize that "the Third Circuit has not yet spoken" on the issue of what factors to apply "in the Internet keyword advertising context."  Opp. Br. at 10.  Plaintiffs assert that "some courts have attempted to fashion" a test "that places more weight on one or more… factors," but then cite two cases from other circuits that set **different** lists of factors.  *Id.* at 10-11 (citing *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1154 (9th Cir. 2011); *Hearts on Fire Co, LLC v. Blue Nile, Inc.*, 603 F. Supp. 2d 274, 289 (D. Mass. 2009)).  Plaintiffs then proceed **not** to apply either of those lists of factors, instead reverting without explanation to the *Lapp* factors.  *Id.* at 11-14.

Plaintiffs cite *Bijur Lubricating Corp. v. Devco Corp.*, 332 F. Supp. 2d 722, 728-33 (D.N.J. 2004) to support the assertion that "in determining likely confusion in a keyword

---

[2] *Checkpoint* cites *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1229 (3d Cir. 1978) for this, then discusses *Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460, 463 (3d Cir. 1983).  The *Lapp* factors were first set forth in *Scott Paper*.  *See Lapp*, 721 F.2d at 463 (citing *Scott Paper*, 589 F.2d at 1229).

advertising case, the Court **must begin** with an analysis of the *Lapp* factors." Opp. Br. at 11-12 (emphasis in original). However, *Bijur* did not involve keyword advertising at all; rather, it involved use of the plaintiff's trademark "**on the [defendant's] website** and in its metatags." *Bijur*, 332 F.2d at 728 (emphasis added). Thus, it has no bearing on this case, which is a pure keyword advertising case with no allegations that Plaintiffs' marks were used in Davison's ads or on its website.

While Plaintiffs cite one New Jersey district court case involving keyword advertising that applied the *Lapp* factors,[3] it is distinguishable in that the defendant was not a competitor but the internet search company itself. In the only case either party found in this circuit that involved internet keyword advertising claims brought against a competitor—in other words, **the only analogous case**—the Eastern District of Pennsylvania, applying the two tests set forth by the Third Circuit in *Checkpoint*, held that there was no likelihood of confusion as a matter of law. *J.G. Wentworth*, 2007 WL 30115, at *6-7 (citing, *inter alia*, *Checkpoint*, 269 F.3d at 280, 292-93 for the "consumers viewing the mark" test and for the test of initial interest confusion).

Plaintiffs disagree with the tests applied in *J.G. Wentworth*—despite the fact that those tests come directly from *Checkpoint*, which Plaintiffs otherwise rely on extensively—because application of those same tests here mandates dismissal of Plaintiffs' claims. The only arguments Plaintiffs advance against *J.G. Wentworth* is that it did not apply the *Lapp* factors and that it is allegedly distinguishable because Plaintiffs "have alleged **actual** confusion." Br. in Opp. at 19 (emphasis in original). The *Lapp* factor question has been answered above. As for actual confusion, Plaintiffs have

---

[3] *See* Opp. Br. at 11 (citing *800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273 (D.N.J. 2006)).

alleged **no facts** concerning, much less supporting, that conclusory allegation; indeed, in the Complaint it is alleged solely "on information and belief." Compl. at ¶ 30. Conclusory allegations are insufficient to survive a motion to dismiss. *See*, *e.g.*, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

      B.    <u>Plaintiffs' Own Filings Show There is No Initial Interest Confusion Here</u>

Plaintiffs assert initial interest confusion, claiming that "the text of Davison's sponsored link ads does not clearly indicate that the link is for Defendant or any company other than" Plaintiffs. Br. in Opp. at 15. However, Plaintiffs' own exhibit shows that Davison's sponsored ads consist of a brief slogan **and Davison's web address**, which is "www.***davison***.com," in only marginally smaller font. *Id.* at Ex. B pp. 2-3 (emphasis added). Some ads, as an additional source identifier, also invite viewers to "**Visit Homepage Davison**.com." *Id.* (emphasis added). Plaintiffs' conclusory assertion that Davison's ads do not identify Davison as their source and thus it "would be very easy for a consumer… [to] click on the link to [Davison's] website under the mistaken belief the link was associated with or originated from Plaintiffs"—in other words, the assertion that there is initial interest confusion here—simply is not plausible.

Plaintiffs cannot be permitted to survive a motion to dismiss on the basis of arguments that are ***shown to be implausible*** by the very exhibits Plaintiffs chose to attach to their brief, particularly since, as in *J.G. Wentworth*, Plaintiffs "do[] not allege that defendant's advertisements and links incorporate plaintiff's marks in any way discernable to internet users and potential customers." *J.G. Wentworth*, 2007 WL 30115, at *7-8 ("initial interest confusion does not apply" in such circumstances).

*II.*    ***Plaintiffs' False Endorsement Claims are Implausible on Their Face***

Plaintiffs argue that their false endorsement claim is sufficient because (1)

4

"Kaufman has sufficiently alleged that he has a distinct identity," Opp. Br. at 9; and (2) the "Third Circuit has adopted a slightly modified *Lapp* test for determining likelihood of confusion in a false endorsement claim, but the substantive factors are essentially the same as in a trademark infringement claim." *Id.* at 10.  Plaintiffs do not even argue that any consumers are likely to think that Plaintiffs endorse Davison's services, although a claim for false endorsement is not viable without plausible factual allegations that "the defendant's use of the mark to identify its goods or services is likely to create **confusion concerning the plaintiff's sponsorship or approval** of those goods or services."  *Facenda v. NFL Films, Inc.* 542 F.3d 1007, 1014 (3d Cir. 2008) (emphasis added) (citing *Commerce Nat'l Ins. Servs., Inc. v. Commerce Ins. Agency, Inc.*, 214 F.3d 432, 437 (3d Cir. 2000)).

      Plaintiffs acknowledge that the parties "are direct competitors."  Opp. Br. at 2; *see also* Compl. at ¶¶ 1, 19.  Plaintiffs do not cite, and Davison is not aware of, any case in which false endorsement was alleged against **a direct competitor**, for the obvious reason that consumers are unlikely to believe that a company or business-person endorses products or services that directly compete with its own.  The cases Plaintiffs cite merely stand for the familiar proposition that using the image or other identifying feature of a well-known person in an advertisement, in such a way that consumers are likely to believe that he sponsors or otherwise endorses the advertised product or service, is false endorsement under the Lanham Act.  *See* Opp. Br. at 8-9 (citing *Facenda*, 542 F.3d at 1014 (use of NFL player's voice in program promoting football-themed video game); *Hauf v. Life Extension Fdn.*, 547 F. Supp. 2d 771, 774-76 (W.D. Mich. 2008) (use of photograph and purported testimonial of cancer survivor and

5

his mother in promotional materials of organization that sold alternative medicines)); *see also id.* at 3 (citing *Allen v. Nat'l Video, Inc.*, 610 F. Supp. 612, 621-22 (S.D.N.Y. 1985) (use, in ad for movie rental club, of photograph of Woody Allen celebrity lookalike)).

The common theme of the cases Plaintiffs cite is that the product or service at issue is one the plaintiff might conceivably endorse; that permits the inference that consumers are likely to believe he did endorse it, enabling plaintiffs to survive a motion to dismiss. *See Iqbal*, 129 S. Ct. at 1949 (to "survive a motion to dismiss, a complaint must… 'state a claim **that is plausible on its face**.'") (emphasis added). Because the parties here are direct competitors, such an inference is **highly implausible** since competitors generally do not endorse each other's directly competing products. Plaintiffs cite no authority to the contrary, and indeed, their Opposition Brief does not even address this critical issue.

Plaintiffs have also not cited, nor is Davison aware of, any case in which a party's use of a person's name **as an internet advertising keyword** has even been considered as a possible basis for a false endorsement claim, much less held to be false endorsement. Instead, Plaintiffs ask the Court to take it on faith that when a consumer types the name of a celebrity into an internet search engine, the consumer is likely to believe that every ad that comes up in response to that search—even ads that do not mention or depict the celebrity in any way—is for a product or service that the celebrity endorses. Again, Plaintiffs cite no authority for this point, and it is simply not plausible that consumers believe that the ads they see on the results page of internet searches are endorsed by the well-known person whose name they typed into the search engine—particularly where, as here, the ad identifies the advertiser, does not

even reference the well-known person, and the advertiser is a direct competitor of that well-known person's business.

### III.     New York Civil Rights Law § 50-51 Does Not Support Plaintiffs' Claim

As Davison noted in its opening brief, "with certain narrow exceptions not at issue here," these statutes do not protect the pecuniary interests of public figures.  Br. at 10.  Plaintiffs based their Opposition Brief entirely on those narrow exceptions, despite the lack of analogy between those cases and this one.  The cases on which Plaintiffs primarily rely involved the use of a celebrity's image and name **on products and/or in advertisements**.  See Opp. Br. at 23-24 (discussing *Ryan v. Volpone Stamp Co., Inc.* 107 F. Supp. 2d 369 (S.D.N.Y. 2000) (addressing such claims where a famous baseball player licensed the use of his image, name and signature on souvenirs but later withdrew that authorization); *id.* at 22 (citing *Allen*, 610 F. Supp. at 621-22 (holding that the photograph of a convincing Woody Allen lookalike used in an advertisement for a movie-rental club was an "image" of Woody Allen under the statutes)).

Those cases, unlike this one, are consistent with the purpose of the statutes. *See Stephano v. News Group Pubs., Inc.*, 64 N.Y.2d 174, 182 (1984) ("The statutes have their origin" in a 1902 decision holding "that a young woman **whose picture had been used… on flour advertisements** without her consent could not recover for [that] violation"; in response, the legislature "amend[ed] the Civil Rights Law to establish a statutory 'right to privacy'") (emphasis added).  Thus, while acknowledging that such facts could also support a claim by a public figure, New York's highest court held that a model whose photo was used without consent to illustrate a news article promoting the coat he wore had no claim because the photo appeared in the fashion section of a newspaper, not in an advertisement.  *Id.* at 185 (noting that a "picture illustrating an

article on a matter of public interest [including fashion] is not… within the prohibition of the statute… unless the article is an advertisement in disguise") (internal cite omitted).

Plaintiffs' reliance on *Ryan*, *Allen* and *Stephano* is thus misplaced. The exceptions for displaying a public figure's name and/or image on products or in advertisements have no bearing here, since it is undisputed that Plaintiffs' names and images do not appear anywhere in Davison's sponsored ad or on the web page to which consumers are directed if they click on the ad. The weakness of Plaintiffs' argument is further emphasized by their misleadingly vague characterization of *Ryan* as involving a defendant who "used Ryan's name to promote the sale of various commercial goods." Opp. Br. at 23. That vagueness serves to obscure how utterly unrelated the *Ryan* facts are to the case at bar: the "commercial goods" were **Nolan Ryan souvenirs featuring his image and/or name**, including "coins and medals, and all products with facsimile… Ryan signatures… watches, plates and figurines." *Ryan*, 107 F. Supp. 2d at 373. These cases are inapposite, thus unhelpful to Plaintiffs' case.

## IV.   CONCLUSION

For the foregoing reasons, it is respectfully submitted that Plaintiff's Complaint should be dismissed with prejudice in its entirety pursuant to Fed.R.Civ.P. 12(b)(6). A proposed order is attached for the Court's convenience.

Dated: June 29, 2012            s/James R. Kyper
                                James R. Kyper, Esq. (PA I.D. No. 23099)
                                Eliza K. Hall, Esq. (PA ID No. 205508)
                                K&L GATES LLP
                                K&L Gates Center
                                210 Sixth Avenue
                                Pittsburgh, Pennsylvania 15222
                                412-355-6500
                                *Counsel for Defendant,*
                                  *Davison Design & Development, Inc.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2012, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                       s/James R. Kyper  
                                       James R. Kyper, Esq.  
                                       K&L GATES LLP  
                                       K&L Gates Center  
                                       210 Sixth Avenue  
                                       Pittsburgh, Pennsylvania 15222