**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| QUIRKY, INC. and BEN KAUFMAN,<br><br>        Plaintiffs,<br><br>    v.<br><br>DAVISON DESIGN & DEVELOPMENT,<br>INC.<br><br>        Defendant. | CIVIL ACTION NO.:  2:12-cv-00262-JFC |

**SUR-REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' RESPONSE
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT**

**INTRODUCTION**

Defendant's reply papers essentially ask this Court to find all inferences in

Defendant's favor and make factual determinations concerning consumer knowledge and

perception that are the proper role of the trier of fact.  Although Defendant repeats the

word "plausibility" numerous time throughout its brief, even a cursory reading reveals that

Defendant is really arguing that there is a low "probability" that Plaintiffs will succeed on

their claims.  *See Aktieselskabet AF 21. November 2001 v. Fame Jeans Inc.*, 525 F.3d 8,

17 (D.C. Cir. 2008) ("Twombly was concerned with the plausibility of an inference of

conspiracy, not with the plausibility of a claim.  A court deciding a motion to dismiss must

not make any judgment about the probability of the plaintiff's success . . .").  However,

probability is not the standard on a Rule 12(b)(6) motion to dismiss.  Plaintiffs need only

allege "enough factual matter (taken as true) to suggest" the elements of their claims.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007) (claim may proceed even if Court

believes "that a recovery is very remote and unlikely") (citations omitted).  When all

inferences are properly drawn in Plaintiffs' favor, this Court cannot say as a matter of law that Plaintiffs' claims are unsustainable.

## I.   <u>Plaintiffs Have Stated Claims for Trademark Infringement</u>

The Third Circuit has never held that the *Lapp* factors are to be wholly abandoned in a trademark infringement case merely because it involves keyword advertising.   Nor is it likely the Third Circuit would make such a sweeping holding considering that (1) the Third Circuit has previously held that likelihood of confusion must be decided on a case by case basis, *see Checkpoint Sys. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 297 (3d Cir. 2001) and (2) other Circuits to examine the issue have held that their version of the traditional *Lapp* confusion factors should be analyzed in keyword advertising cases. *See, e.g., Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1149-54 (9th Cir. 2011) (applying *Sleekcraft* confusion factors to claim of infringement based on keyword advertising); *Rosetta Stone Ltd. v. Google, Inc.*, 676 F. 3d 144, 152-60 (4th Cir. 2012) (issues of fact concerning various *Pizzeria Uno* confusion factors precluded summary judgment in keyword advertising case).[1]

---

[1] *Network Automation*, 638 F.3d 1137 and *Hearts on Fire Co., LLC v. Blue Nile, Inc.*, 603 F. Supp. 2d 274 (D. Mass. 2009), cited in Plaintiffs' responsive brief (pp. 10-11, 14-17), each held that the traditional likelihood of confusion factors should be analyzed in keyword advertising cases.  The Courts in these cases then went on to hold that, in keyword advertising cases, some traditional confusion factors should be given more weight than others or the Court should consider *additional* factors (not *different* factors as Defendant misstates), including factors relating to the context in which Internet users encounter and approach the sponsored keyword advertisements.  However, neither of these cases discarded the traditional confusion factors, as Defendant incorrectly intimates.  Moreover, contrary to Defendant's blatant misrepresentation, Plaintiff fully analyzed these additional factors concerning the context in which Defendant's sponsored ads appeared in great detail as they supported the likelihood of confusion in the instant case.  *See* Pl. Opp. Br. at 14-17.

Similarly unavailing is Defendant's argument that the *Lapp* factors need not be applied in keyword advertising cases because the keywords themselves are not "viewed" by consumers.  As shown clearly in Exhibit B to the Complaint, Plaintiffs' trademarks that have been purchased as keywords each are clearly visible in the search bar at the top of the search engine's results page, just above Defendant's sponsored advertisement.  Indeed, more than just simply "viewing," in keyword advertising cases, the consumer herself actually inputs the keywords at issue into the search engine search bar, which remain in view on the search results page.  Thus, a consumer would likely expect the search results to relate to those keywords.  And in many examples, these keywords appear much larger than Defendant's own trademark, which is in smaller font buried within the reference in the ad to the URL.

Defendant's attempts to distinguish *800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273 (D.N.J. 2006) and *Bijur Lubricating Corp. v. Devco Corp.*, 332 F. Supp. 2d 722 (D.N.J. 2004) do nothing more than point out distinctions without a difference.  The fact that the defendant in *800-JR Cigar* was a search engine instead of a competitor is immaterial since the relevant issue in that case, as it is here, was whether the use of keywords to trigger sponsored ads (not who purchased them or made them available) was likely to cause confusion.  Similarly, the keyword "metatags" in *Bijur Lubricating Corp.*, which are sometimes used by search engines to find and determine the ranking of search results, are analogous to the keywords at issue here.

Finally, Defendant talks about the "tests" used by *J.G. Wentworth, S.S.C. Ltd. P'ship v. Settlement Funding LLC*, 2007 U.S. Dist. LEXIS 288 (E.D. Pa. Jan. 4, 2007), the sole case upon which Defendant relied in support of its motion to dismiss Plaintiffs'

trademark claims.  However, the Court in *J.G. Wentworth* **did not consider any test**, under *Lapp* or otherwise, in reaching its holding.  While the Court in *J.G. Wentworth* cited to the Third Circuit's opinion in *Checkpoint Sys.* for some general propositions about trademark infringement and the doctrine of "initial interest" confusion, the Court then failed to analyze any of the factors set forth by the Third Circuit for determining direct or initial interest confusion, impermissibly found certain factual inferences in the defendant's favor and reached its ultimate conclusion based solely on its own personal opinion.  As discussed in Plaintiffs' responsive papers, analysis of both direct and initial interest confusion under actual tests set forth by the Third Circuit wholly support Plaintiffs' claims.[2]

## II.   Kaufman Has Stated a Claim for False Endorsement

Contrary to yet another misrepresentation made by Defendant in its reply papers, Kaufman has specifically alleged that Defendant's use of Kaufman's personal name BEN KAUFMAN, which is akin to his trademark, is likely to confuse consumers into mistakenly believing that Defendant's services are "***endorsed***" by Kaufman.  *See* Compl. ¶¶ 28, 30.

Defendant has not cited one case for the proposition that a false endorsement claim cannot stand where the parties are direct competitors; nor could it.  In proffering this argument, Defendant impermissibly asks this Court to infer and assume that every

---

[2] The allegations here of actual confusion, which even further distinguish *J.G. Wentworth*, are more than sufficiently pleaded.  *See* Compl. ¶ 30.  Although concise, they are not the type of "legal" conclusions that are not given deference on a motion to dismiss, *see Twombly*, 550 U.S. at 555-57, and Defendant has not cited any case where allegations of actual confusion similar to those in Plaintiffs' Complaint were deemed insufficient.  To the contrary, Plaintiffs' allegations are more than sufficient to "suggest" the specific facts concerning actual confusion that will be developed during discovery.  *See Fed. Express Corp. v. UPS*, 765 F. Supp. 2d 1011, 1023 (W.D. Tenn. 2010) (general allegations of actual consumer confusion sufficient to sustain Lanham Act claim at pleadings stage; specifics will be developed during discovery); *see also China Intl Travel Servs. (USA) v. China & Asia Travel Serv.*, 2008 U.S. Dist. LEXIS 106622, at *21 (N.D. Cal. Dec. 18, 2008) (general allegations of actual confusion sufficient to support default judgment).

4

consumer typing the name BEN KAUFMAN into a search engine will know that

Defendant is Plaintiffs' competitor, as opposed to another company with which Plaintiffs

may or may not have a relationship.  Indeed, Exhibit B to the Complaint shows other

instances where searches for Plaintiffs' name and trademark yield sponsored ad results

for companies that work in conjunction with Plaintiffs, such as authorized retailers.

Moreover, given the context in which the Defendant's sponsored ads appear, including

the ambiguous text in the main and largest portion of the ad, "Product/Invention Idea? –

We can Help Design your Ideas," that generically describes services offered by both

Plaintiffs and Defendant, it is very likely that an Internet user may not even realize the ad

is for a competitor of Plaintiff.  Thus, not only has Defendant impermissibly asked for an

inference in it favor but it is one that is wholly unsupported.

### III.  Kaufman Has Stated a Claim for Violation of the Right to Privacy

Ostensibly realizing that it erroneously relied on outdated and inapplicable case

law in support of its motion to dismiss Kaufman's claims based on the right of privacy, in

its reply papers Defendant now makes the entirely *new* argument that no claim for

invasion of the right to privacy can lie because consumers do not see Kaufman's name

when purchased by Defendant as a keyword.  First, as discussed above, Kaufman's

name is plainly in view in the search bar in very close proximity to Defendant's ad, which

only appears in the search results due to Defendant's unlawful purchase of Kaufman's

name as a sponsored ad keyword and only after the Internet user has already typed

Kaufman's name into the search engine's search bar.

Nonetheless, on its face, N.Y. Civil Rights Law §§50-51 protects broadly against

the unauthorized "*use*" of a persons "name" for "advertising purposes" (or purposes of

trade).  There is no limitation in the statute that the plaintiff's name must be used on the goods themselves; nor has Defendant cited any case that has held as such.[3]

Here, Defendant "used" Kaufman's personal "name" to trigger sponsored "advertisements" linked to Defendant's website, facts that wholly fit within the prohibitions of the statute.  Indeed, keyword sales that trigger sponsored links are specific "advertising" programs run by the search engines.  Why else would Defendant have purchased Kaufman's name as a sponsored ad keyword if not to take a free ride on his celebrity, which is exactly what N.Y. Civil Rights Law §§50-51 prohibits.  *See Radio Today, Inc. v. Westwood One, Inc.*, 684 F. Supp. 68, 74 (S.D.N.Y. 1988) ("defendant misused Dan Formento's name for the purpose of commercial exploitation, which . . . is the harm that the statute is meant to prevent"; use "was deliberately undertaken as part of defendant's scheme to exploit commercially plaintiffs' goodwill and reputation").[4]

And, unlike Plaintiffs' trademark claims, the violation of Kaufman's right of privacy is not contingent upon a finding of likely consumer confusion – it is a statute of strict liability that applies whether or not consumers would believe Kaufman endorses Defendant's services.

---

[3] Defendant's flawed argument here on "use" is analogous to the argument **rejected** by various Circuits, and even the Court in *J.G. Wentworth*, that the purchase of a trademark as a keyword is not a "use" in commerce sufficient to trigger Lanham Act liability.  *See, e.g., Rescuecom Corp. v. Google Inc.*, 562 F.3d 123, 129 (2d Cir. 2009); *Network Automation*, 638 F.3d at 1145; *J.G. Wentworth*, 2007 U.S. Dist. LEXIS 288, at *17.

[4] Defendant's citations to factual situations in other cases involving newspaper articles are irrelevant since Defendant used Kaufman's name for purposes of advertising and the trade, not public commentary.

6

## CONCLUSION

For all the foregoing reasons and authorities, as well as those set forth in Plaintiffs' responsive papers, Plaintiffs respectfully request that this Court deny Defendant's Motion to Dismiss the Complaint.

Respectfully submitted,

  s/Mark A. Willard
Mark A. Willard  PA I.D. No. 18103
mwillard@eckertseamans.com
Audrey K. Kwak  PA I.D. No. 200527
akwak@eckertseamans.com
ECKERT, SEAMANS, CHERIN &
MELLOTT LLC
600 Grant Street
44th Floor
Pittsburgh, Pennsylvania 15219
Tel:  (412) 566-6000

Eric J. Shimanoff (*pro hac vice*)
ejs@cll.com
Cowan Liebowitz & Latman, P.C.
1133 Avenue of the Americas
New York, NY  10036-6799
Tel:  (212) 790-9200

*Counsel for Plaintiffs Quirky, Inc. and
Ben Kaufman*

Dated:  July 2, 2012

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July 2, 2012, a true and correct copy of

SUR-REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' RESPONSE IN

OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT was

electronically filed with the Clerk of the Court using the CM/ECF system, which will send

notification of such filing to all counsel of record.

                                                                                  s/Mark A. Willard